UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE SMITH,

                  Plaintiff,                    Case No. 2:14-cv-11804
                                                District Judge Denise Page Hood

v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

                  Defendant.
_____/

**RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DE 14) AND TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DE 13)**

**I.**      **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 14), **DENY** Plaintiff's motion for summary judgment (DE 13), and

**AFFIRM** the Commissioner's decision.

**II.**      **REPORT**

      Plaintiff, Michelle Smith, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

benefits and supplemental security income.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (DE 13), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 14), Plaintiff's reply (DE 15), and the administrative record (DE 8).

## A.    Background

Plaintiff protectively filed her applications for benefits on December 14, 2011, alleging that she has been disabled since August 25, 2011, at age 36.  (R. at 171.)  Plaintiff alleges disability as a result of anxiety, depression, and back problems.  (Id.)  Plaintiff's applications were denied.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Mary Ann Poulose held a hearing on March 6, 2013 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 120-170.)   On March 31, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Poulose's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

## B.    Plaintiff's Medical History

Plaintiff has a history of back problems and depression.  The record of Plaintiff's lower back problems began on August 25, 2011, when she presented to the St. Joseph's Hospital Emergency Department, complaining of sharp lower back pain, which was exacerbated by pushing and pulling at work.  (R. at 444.)  Upon examination, she was found to have a positive straight leg raise test.  On

September 6, 2011, Defendra Sharma, M.D., Plaintiff's primary care physician, noted that Plaintiff could only perform limited bending and twisting, and could not lift more than ten pounds. (R. at 397.) On September 15, 2011, Plaintiff underwent an MRI of her lumbar spine. (R. at 467.) Chandler G. Veenhuis, M.D., concluded that the MRI demonstrated grade 2 L5-S1 spondylolisthesis.

On November 21, 2011, neurosurgeon Sivasupiramaniam Sriharan, M.D., noted that Plaintiff had a positive straight leg raise test and was tender to palpitation in her lower lumbar spine. (R. at 475.) Otherwise, Dr. Sriharan concluded that Plaintiff had good strength, sensation, and deep tendon reflexes in her upper and lower extremities. Based on the MRI results, Dr. Sriharan concluded that Plaintiff had a progressive spondylitic defect, for which Plaintiff's best option was surgery. Dr. Sriharan stressed that Plaintiff would need to quit smoking for any chance of success. (R. at 476.) On January 3, 2012, Plaintiff underwent a posterior lumbar laminectomy and lumbar fusion. (R. at 480.)

Following the surgery, Plaintiff's testing revealed "satisfactory laminectomy and fusion changes" on February 6, 2012. (R. at 517.) A month later, Plaintiff complained of increasing back pain. (R. at 509-510.) An MRI of her lumbar spine "looked good" but showed chronic L5 radiculopathy on the right. (R. at 513.) On May 2, 2012, Dr. Sriharan noted that an x-ray showed that Plaintiff's fusion was stable, but not fully solid, and warned Plaintiff about the dangers of smoking and

nonunion.  (R. at 507.)  Plaintiff was warned again to stop smoking on July 25, 2012 and on September 26, 2012, when Dr. Sriharan noted that Plaintiff "fully has pseudoarthrosis from smoking."  (R. at 587-588.)  An October 17, 2012 MRI "actually look[ed] a lot better compared to her preoperative scan," but Dr. Sriharan opined that Plaintiff likely had pseudoarthrosis from continued smoking.  (R. at 591.)  On January 16, 2013, following an MRI of Plaintiff's lumbar spine, Dr. Sriharan concluded that Plaintiff had yet to achieve solid bony fusion and suggested a second surgery as an option, but cautioned that Plaintiff "absolutely has to quit smoking, otherwise the whole surgery is wasted."  (R. at 568.)  She underwent a second surgery on January 29, 2013.  (R. at 598.)  On March 20, 2013, Dr. Sriharan noted that Plaintiff was "overall improved."  (R. at 607.)

The record of Plaintiff's problems with depression and anxiety began on October 19, 2011, when she tragically attempted suicide by taking an overdose of pills.  (R. at 431.)  When she was seen at the AuSable Valley Community Mental Health Center on November 22, 2011, she denied any thoughts of self-harm. (391.)  She was diagnosed with major depressive disorder and anxiety disorder, and was assessed with a Global Assessment Functioning ("GAF") score of 40.[1] (R. at 392.)  Plaintiff attended group therapy sessions and seemed to do well, but was consistently assessed with a GAF of 40.  (R. at  400, 428, 523, 530, 542, and

---

[1] An thorough description of the GAF assessment is provided in § II(F)(1)(a), *infra*.

4

555.)  On June 8, 2012, Plaintiff was seen because of an increase in anxiety and depression due to financial stress.  (R. at 548.)  She was reported as "visibly depressed by behavior, affect, and mood."  (Id.)  On September 14, 2012, however, Kathryn White, LLMSW, discussed with Plaintiff "the progress she had made since entering treatment a year ago and that it was time for her to use her skills in the community without [AuSable Valley] C.M.H."  (R. at 519.)  She was accordingly released from her therapy program, with the note that if things changed, she "can always return."  (Id.)

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

At the March 6, 2013 administrative hearing, Plaintiff testified that she had recently undergone her second back surgery in the past year.  (R. at 151-52.)  She did not have physical therapy after her first surgery because the bone graft never took, necessitating a second surgery.  (R. at 161.)  After the first surgery, she wore a back brace continuously for five months, and was wearing one at the hearing.  (Id.)  Plaintiff testified that her physician imposed a five-pound weight limit and cautioned her against bending and twisting.  (R. at 157.)  Between her operations, she did not feel like her back was getting better.  (R. at 157-58.)  Plaintiff testified that she had trouble sleeping because of the pain and has back spasms that lasted a few minutes at a time.  (R. at 159-160.)  She averred that she took Celexa for

depression, gabapentin (Nerontin), Percocet, Urecholine, and Flomax, and had no side effects.  (R. at 153-54.)  Plaintiff noted that she had not received injections for her back pain.  (R. at 154.)  She testified that she was not in therapy for her depression because there were no centers that took her insurance close to her home.  (R. at 154 and 158.)

Plaintiff testified that she lived with her husband and two of her four children, aged nineteen and seventeen.  (R. at 142.)  She testified that she had a driver's license, but did not drive because she was not allowed to "twist and turn" following her most recent back surgery, though she was unclear if this was a permanent restriction.  (R. at 146-47.)  Plaintiff testified that, since her last back surgery, she needed help taking care of her personal needs, including showering, and putting on pants, socks, and shoes. (R. at 147-48.)  She averred that, about five months after her first surgery, she could do limited bending.  (R. at 148.)

Plaintiff testified that she cooked burgers and spaghetti on the stove, did the dishes, and part of the laundry, with her children's help.  (R. at 148-49.)  She noted that she had no problems retrieving plates and glasses out of the cupboards or washing her hair, but sometimes had problems holding onto things.  (R. at 152-53.)  Plaintiff also went grocery shopping, but could only walk about half the distance of Wal-Mart before she began to feel sharp pains in her lower back and left leg.  (R. at 149-150.)  Plaintiffs testified that she could stand for five to ten minutes, sit for

6

ten to fifteen minutes, and had a hard time lifting a gallon of milk.  (R. at 150-51.)

During the hearing, Plaintiff noted that she wanted to stand up.  (R. at 152.)

Plaintiff testified that she enjoyed reading and crocheting.  (R. at 151.)   She noted

that she smoked about a half a pack of cigarettes per day.  (R. at 153.)

Plaintiff testified that she was a high-school graduate and averred that she

had a part-time housekeeping job before she had her first back surgery.  (R. at

143.)  Prior to that, she did factory work at Tawas Plating, which involved "loading

parts on racks," which weighed from 100 to 300 pounds.  (R. at 143-44.)  She was

fired from that position because she was late one time, which she believed was a

pretext for the real reason: missing time for medical appointments.  (R. at 144 and

156.)  Prior to that, she worked as a cashier at Burger King, at a gas station, and at

an amusement park.  (R. at 144-45.)

### 2.    Vocational Expert Testimony

Janie Massey testified as the Vocational Expert ("VE") at the March 6, 2013

administrative hearing.  (R. at 161-170.)  The VE classified Plaintiff's past relevant

work as: fast food worker, which was light and unskilled, but medium as

performed; machine operator, which was medium and unskilled, but heavy as

performed; and, ride operator, which was light and semi-skilled, but medium as

performed.  (R. at 163.)  The ALJ asked the VE to determine if a hypothetical

person of Plaintiff's age, educational background, work experience, and skill set

could perform her past relevant work with the following limitations:

> [The hypothetical individual is] limited to light work that allows for
> only occasional climbing, crouching, crawling, stooping, kneeling; but
> no climbing of any ladders, ropes, scaffolds; and offering the ability to
> sit or stand at will; limited to unskilled jobs.

(R. at 163.)   Based on this hypothetical, the VE testified that the hypothetical

individual could perform the fast food worker position per the DOT, but that, as

performed, there was no sit-stand option.  (R. at 164.)  The ALJ then asked if there

were any positions in the labor market that the hypothetical individual could

perform with a sit-stand option.  The VE identified the positions of garment sorter,

with 109,000 jobs nationally and 1,240 in the state of Michigan, storage facility

rental clerk, with 108,200 jobs nationally and 1,650 in the state of Michigan, and

photocopying machine operator, with 46,500 jobs nationally and 300 in the state of

Michigan.  (R. at 164-65.)

The ALJ then asked whether there were any positions that the hypothetical

individual could perform at the sedentary level, with "the occasional postural," no

ladders, ropes, or scaffolds, and a sit-stand option at will.  (R. at 165.)  The VE

testified that the hypothetical individual could perform as a surveillance system

monitor, with 125,000 jobs nationally and 1,100 in the state of Michigan and

document preparer, with 3,500 jobs nationally and 210 in Michigan.  The VE

clarified, however, that those positions would be eroded by about 25% because of

8

the sit-stand option.  The VE further noted that employers do not allow any greater than ten to eleven percent of time off task, and limit absences at two per month. (R. at 165.)

Upon questioning from Plaintiff's counsel, the VE testified that pre-planned absences for medical treatment would not be treated as unscheduled absences, because they would likely be scheduled, and indicated that employers might be more flexible.  (R. at 165.)  The VE ultimately concluded that the answer was employer-dependent, but that missing more than two days of work per month would be an issue.  (R. at 168-69.)

### D.  THE ADMINISTRATIVE DECISION

On March 21, 2013, the ALJ issued her decision.  (R. at 120-130.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since August 25, 2011.  (R. at 122.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar spondylolisthesis status-post two surgeries and depressive disorder.  (Id.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 123-24.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the capacity to perform unskilled sedentary work with "only occasional climbing, crouching, crawling, stooping, and kneeling, with no ladders, ropes, or scaffolds, permitting a sit/stand-at-will option."  (R. at 125.)  Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform her past relevant work.

---

5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

At step five, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.  (R. at 128.) She therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 129.)

### E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F. ANALYSIS

In her motion for summary judgment, Plaintiff asserts three statements of error. First, she contends that the ALJ failed to articulate adequate evidentiary support for her RFC determination. Second, Plaintiff argues that the ALJ erred by discounting her credibility. Finally, Plaintiff seeks a remand under Sentence Six of

§ 405(g) due to new and material evidence. The Undersigned will address each argument in turn.

### 1.   The ALJ Appropriately Articulated Plaintiff's RFC

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ '"need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."' *Id.* (quoting *Bencivengo v. Comm'r of Soc. Sec.,* No. 00–1995, 251 F.3d 153, slip op. at 5 (3d Cir. Dec. 19, 2000).

Here, Plaintiff asserts that the ALJ failed to discuss records documenting the entirety of Plaintiff's impairments, "including [t]he anxiety disorder, depressed GAF scores, or history of losing her parental rights." (DE 13 at 10.) Plaintiff calls into question the ALJ's statement that Plaintiff "ha[d] not undergone any treatment for her back impairment," given that the ALJ found one of her severe impairments to be status-post two surgeries. (R. at 122 and 127.) Plaintiff also contends that the ALJ erred by significantly truncating the discussion of Plaintiff's mental health condition, by focusing only on her intact memory and adequate concentration.

Defendant counters that there is no medical evidence to support greater functional limitations than those assessed by the ALJ. She asserts that Plaintiff has merely pointed to evidence supporting her position, but has not indicated that the

evidence on which the ALJ relied was insufficient or incorrect.  The Commissioner further argues that Plaintiff overstates the significance of Plaintiff's GAF scores, "which the APA has since abandoned as a clinical tool."  (DE 14 at 15.)

Plaintiff's arguments are unavailing.  There is substantial evidence in the record for the ALJ's RFC conclusion.  Rather than identifying errors in the ALJ's RFC assessment, Plaintiff instead points to other evidence in the record that supports her conclusions and asks this Court to re-weigh the evidence in her favor.  *See VanSingel v. Comm'r of Soc. Sec.*, 26 F. App'x 488, 489 (6th Cir. 2002) ("If supported by substantial evidence, the Commissioner's decision must be affirmed, even if [the reviewing court] would have arrived at a different result.") (citing *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir.1983)).  Such an analysis would be incompatible with the 'substantial evidence' standard of review. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (concluding that "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.").  Nevertheless, the Undersigned will address Plaintiff's statements of error in more detail.

### a.   Plaintiff's Mental RFC

The ALJ provided a narrative discussion describing how the evidence supported her conclusions as to Plaintiff's mental health.  The parties disagree on the significance the ALJ should have placed on Plaintiff's repeated GAF scores of

15

40.  (R. at 400, 428, 523, 530, 542, and 555.)  In the now-superseded Diagnostic and Statistical Manual of Mental Disorders ("DSM"), Fourth Edition, a GAF of 40 was indicative of "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  DSM-IV-TR, p. 34.   However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).  In addition, the Social Security Administration released the following Administrative Message in January 14, 2014:

> [A] GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. *Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.*

*Id.* (quoting AM-13066) (emphasis in original).  A review of the record demonstrates that Plaintiff's GAF scores were simply provided as a number, without explanation to the period in which the rating applies.  Furthermore, the record as a whole indicates that Plaintiff's mental health conditions improved with therapy.  For example, she was ultimately released from therapy at the AuSable Valley CMH due to "the progress she had made since entering treatment" a year before.  (R. at 519.)  Furthermore, the ALJ noted that Plaintiff's mental status

16

examinations showed that she had intact memory and adequate concentration. Finally, the ALJ pointed out the inconsistency between Plaintiff's testimony, that she was no longer in therapy for insurance reasons, and the evidence of record, which indicated it was *because of her overall improvement*. (Id.) The ALJ adequately considered Plaintiff's depression and limited her to unskilled work as a result. (R. at 127.) In sum, substantial evidence in the record supports the mental RFC assessed by the ALJ.

### b.    Plaintiff's Physical RFC

Plaintiff also takes issue with the ALJ's treatment of her physical impairments. She correctly points out that the ALJ, somewhat puzzlingly, notes that "[t]he evidence of record fails to show that the claimant has undergone any treatment for her back impairment." (R. at 127.) However, read in context, the ALJ was discussing Plaintiff's medication regimen, and Plaintiff did not testify to taking any medication, receiving injections, or undergoing physical therapy for her back injuries since her last surgery. This is also addressed earlier in the ALJ's decision, when she notes that Plaintiff "mentioned that she has not undergone any treatment for her back pain." (R. at 125.)

As strange as the ALJ's statement was, she took Plaintiff's multiple back surgeries and related complications into account throughout her opinion, and limited Plaintiff to sedentary work with only occasional postural activities as a

17

result.  (R. at 122, 125, and 126-27.)  In reaching this conclusion, the ALJ assigned

great weight to the September 6, 2011 medical source statement of Plaintiff's

primary care physician, Devendra Sharma, M.D., who indicated that Plaintiff could

lift no more than ten pounds and had limits in bending and twisting.  (R. at 127 and

397.)  The ALJ determined that Dr. Sharma's limitations were consistent with

objective medical evidence in the record, including a lumbar MRI which

demonstrated spondylolthesis causing central canal and bilateral foraminal

stenosis, and Plaintiff's frequent complaints of back pain.  The ALJ appropriately

articulated the reasons for the RFC, substantial evidence supports the RFC, and

Plaintiff has failed to introduce evidence of error.  Accordingly, the Undersigned

recommends that the Court affirm the Commissioner's decision on this point.

### 2.    The ALJ Did Not Err in Assessing Plaintiff's Credibility

Plaintiff contends that the ALJ erred by discounting her credibility.

Specifically, she asserts that substantial evidence does not support the ALJ's

credibility finding, that the ALJ improperly relied on Plaintiff's inability to quit

smoking as a reason to discount her credibility, and that her activities of daily life

do not show an ability to work.  Defendant opposes Plaintiff's statement of error,

maintaining that substantial evidence supported the ALJ's credibility assessment.

"The ALJ's assessment of credibility is entitled to great weight and

deference, since he [or she] had the opportunity to observe the witness's

18

demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).

Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported

by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th

Cir. 1997). "Discounting credibility to a certain degree is appropriate where an

ALJ finds contradictions among the medical reports, claimant's testimony, and

other evidence." *Walters,* 127 F.3d at 531. When assessing an individual's

credibility, "the ALJ must [first] determine whether a claimant has a medically

determinable physical or mental impairment that can reasonably be expected to

produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370,

371 (6th Cir. 2011). The ALJ made this finding here, concluding that Plaintiff's

medically determinable impairments could reasonably be expected to cause the

alleged symptoms. (R. at 21.)

Upon making such a finding, the ALJ must next "consider the entire case

record" to "evaluate the intensity, persistence, and functional limitations of the

symptoms considering objective medical evidence." 20 C.F.R. § 404.1529(c)(1-

3); Soc. Sec. Rul. 96-7p. A non-exhaustive list of relevant factors to be considered

by the ALJ include: 1) the claimant's daily activities; 2) location, duration,

frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the

type, dosage, effectiveness, and side effects of medication; 5) treatment, other than

medication; 6) any measures the claimant uses or has used to relieve his or her pain

or other symptoms; and 7) other factors concerning functional limitations and restrictions. *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed . . . .*") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).  In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight." *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, the ALJ provided a sufficiently specific explanation for her credibility determination, pursuant to the rule.  First, she addressed Plaintiff's stated activities of daily living, including cooking simple meals, washing dishes, and folding laundry.  (R. at 127.)  The ALJ concluded that the activities Plaintiff reported were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (Id.)  Second, the ALJ noted that Plaintiff's subjective reports conflicted with objective medical evidence showing that she had good strength, sensation, and deep tendon reflexes in her lower extremities.  (R. at 475-

76.)  As to Plaintiff's mental health, the ALJ noted that Plaintiff's reason for no longer attending therapy was inconsistent with that provided in the medical record, along with evidence in the record that her memory was intact, and that her concentration was adequate.  (R. at 127.)  Additionally, the ALJ addressed Plaintiff's medication, noting that Plaintiff denied any side effects.  (Id.)

The ALJ pointed to Plaintiff's failure to quit smoking as evidence that her symptoms may not have been as limiting as she alleged.  Specifically, the ALJ indicated that Plaintiff was repeatedly warned that smoking would cause her lumbar fusion to fail.  (R. at 127.)  Substantial evidence supports such a finding. On May 2, 2012, Dr. Sriharan stated that Plaintiff "does continue to smoke and I did warn her again about the dangers of smoking and nonunion."  (R. at 507.) Again, on July 5, 2012, Dr. Sriharan noted that Plaintiff continued to smoke, despite being told "time and again about the smoking." (R. at 587.)   On September 26, 2012, Dr. Sriharan concluded that, unless Plaintiff quit smoking, "it may already be too late and really not going to get better."  (R. at 588.)   On October 17, 2012, Dr. Sriharan noted: "I think [Plaintiff] has a pseudoarthrosis probably as a result of her continued smoking."  (R. at 591.)  Finally, on January 15, 2013, Dr. Sriharan determined that Plaintiff would require a second surgery, but noted that after the first surgery Plaintiff "continued to smoke in the postoperative period despite repeated warnings," which contributed to her pseudoarthrosis.  (R. at 592.)

She concluded that Plaintiff "absolutely has to quit smoking, otherwise the whole surgery is wasted."  (Id.)

The ALJ did not err in considering such evidence when evaluating Plaintiff's credibility.  The Sixth Circuit has generally held that the ALJ may consider whether a claimant has followed a physician's advice to quit smoking when evaluating the claimant's credibility, particularly when quitting will improve recovery of the allegedly disabling condition.  In *Sias v. Secretary of Health & Human Services*, 861 F. 2d 475, 480 (6th Cir. 1988), the Sixth Circuit found substantial evidence to support the ALJ's disability determination where the claimant's physicians had repeatedly warned him to quit smoking and he failed to do so.  The Sixth Circuit emphasized its point by stating:

> The Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive himself to an early grave, that is his privilege—but if he is not truly disabled, he has no right to require those who pay social security taxes to help underwrite the cost of his ride.

*Id.* at 480; *see also Brown v. Soc. Sec. Admin.*, 221 F.3d 1333 (6th Cir. 2000) ("Although Brown suffers from chronic obstructive pulmonary disease, his heavy smoking habit indicates that the condition is not disabling."); *Starr v. Comm'r of Soc. Sec.*, No. 08-12434, 2009 WL 2477548, at *10 (E.D. Mich. Aug. 10, 2009) (concluding that it was appropriate for the ALJ to consider a claimant's smoking

"particularly where smoking reduces the effectiveness of treatment."). Here, Plaintiff was repeatedly warned that continuing to smoke would reduce the effectiveness of her back surgery. While I am not unsympathetic to the statistics cited by Plaintiff in her reply brief as to the difficulty of quitting, the ALJ did not err in his consideration of Plaintiff's failure to quit where it would have, according to Plaintiff's treating physician, increased the effectiveness of her back surgery.

To the extent Plaintiff challenges the ALJ's finding with respect to her activities of daily living, her argument is not persuasive. She merely notes that her "credibility should not have been challenged based upon daily activities, as said activities do not show an ability to work," but does not elaborate on how that is so. (DE 13 at 15.) As support for this argument, she cites to *Bjornson v. Commissioner*, 671 F.3d 640 (7th Cir. 2012) in its entirety. As best as the Court can discern, Plaintiff asserts that her minimal activities of daily living are insufficient to show she is capable of full-time employment. However, as noted above, Plaintiff's ability to cook and clean are not the ALJ's only rationale for discounting Plaintiff's allegations of work-preclusive limitations. *See Boley v. Comm'r of Soc. Sec.*, No. CIV.A. 11-15707, 2012 WL 7748910, at *13 (E.D. Mich. Nov. 28, 2012) *report and recommendation adopted*, No. 11-CV-15707, 2013 WL 1090531 (E.D. Mich. Mar. 15, 2013) (concluding that, while "minimal activities of daily living do not, by themselves, show that a claimant can perform

23

the demands of full-time work," such a consideration *in combination with other relevant factors* was proper to discount Plaintiff's credibility.).  The other relevant factors considered here include objective evidence in the record demonstrating Plaintiff's good strength and adequate concentration, her successful completion of therapy, and her non-compliance with her physicians' instructions to quit smoking. (R. at 127.)

Furthermore, the ALJ expressly stated that she complied with Social Security Rule 96-7p, which requires her to consider a non-exhaustive list of factors in determining credibility.  (R. at 125.)  There is no indication that she failed to do so.  *See, e.g.*, *Malcolm*, 2015 WL 1439711 at *8 (concluding that, in light of the Court's deferential approach to credibility assessments, the ALJ's express statement of compliance was persuasive).  Social Security Rule 96-7p, in accordance with 20 C.F.R. § 404.1529, requires the ALJ to consider the claimant's activities of daily living.  As addressed above, the ALJ did just that, and included such consideration in her credibility determination.  She certainly cannot be *faulted* for complying with the regulation.

The ALJ is also required to consider details about the claimant's pain, aggravating factors, type and effectiveness of medication, other measures to relieve pain, and any other relevant factors.  Soc. Sec. Rul. 96-7p.  Here, as further evidence that the ALJ considered the relevant factors, she summarized Plaintiff's

24

testimony that she cooked, washed dishes, folded laundry, but has problems sitting, standing and walking due to back pain radiating into her lower left extremity. (R. at 125.) The ALJ noted that Plaintiff must alternate between sitting and standing to alleviate her back pain, and summarized Plaintiff's medication. (R. at 125-26.) Plaintiff does not point to any evidence in the record to persuade the Undersigned that the ALJ failed to comply with Rule 96-7p and 20 C.F.R. § 1529 when making her credibility determination. The ALJ therefore provided a sufficiently specific explanation for her credibility determination and Plaintiff has failed to demonstrate that the adverse-credibility finding was not supported by substantial evidence.

### 3.   SENTENCE SIX REMAND

Plaintiff contends that remand is necessary under Sentence Six of § 405(g). She specifically points to two post-decision records to support her assertion. First, Plaintiff directs the Court to a February 2014 report from Dr. Sriharan, which indicates that, following her second surgery, Plaintiff had yet to achieve solid bony fusion. (R. at 10.) Dr. Sriharan goes on to note that Plaintiff "smoked in the postoperative period and [Dr. Sriharan] think[s] that this contributed." (Id.) Second, Plaintiff points to a September 18, 2013 report from Ryan W. Bearer, D.O., indicating that Plaintiff "continues to have pain." (R. at 27.) The Court can remand for further administrative proceedings "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in

the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996). The Undersigned will consider each requirement in turn.

### a.    New

For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)). Here, Plaintiff has met her burden that the evidence is new, as it did not exist until after the ALJ's March 21, 2013 decision.

### b.    Material

A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff fails to meet this burden in the instant action. There is no reasonable probability that Dr. Sriharan's February 26, 2014 statement that Plaintiff had not achieved bony fusion following her second surgery would have caused the Secretary to reach a different disposition. The ALJ already considered Dr. Sriharan's previous statement that Plaintiff's second surgery "may or may not help with her pain," and her assessment that the surgery had a "50-50" chance of

helping.  (R. at 592.)  She also considered Dr. Sriharan's statement that Plaintiff's inability to quit smoking would likely contribute to the same failure to achieve bony fusion as it did in her first surgery.  (R. at 592.)  Such evidence cannot be considered material, as it is basically restating Dr. Sriharan's previous assessments, which the ALJ properly considered.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (declining to overturn the district court's holding that remand was unnecessary where the evidence was "largely cumulative of evidence and opinions already present on the record.").

Dr. Bearer's notation that Plaintiff continued to have pain also cannot be considered material.  As Defendant correctly argues, such evidence is cumulative of evidence already on the record.  The ALJ considered Plaintiff's reports of back pain (R. at 125-126, and 128) and accordingly limited her to sedentary work with postural limitations.  (R. at 125.)  Plaintiff has not met her burden to show the evidence was material.  *See, e.g., Stevens v. Astrue*, 839 F. Supp. 2d 939, 951 (S.D. Ohio 2012) (concluding that evidence that the plaintiff "continued to complain of back pain" was cumulative and did not warrant a remand under Sentence Six).

### c.      Good Cause

Plaintiff also fails to show good cause for a Sentence Six remand.  She argues that "good cause is present as there is evidence that did not exist until after" the ALJ's unfavorable decision.  (DE 13 at 16.)  The Sixth Circuit, however, "has taken a harder line on the good cause test," requiring a claimant to "give a valid reason for his [or her] *failure to obtain* evidence prior to the hearing."  *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (emphasis added); *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.").  Here, Plaintiff provides no reason for failure to obtain such evidence prior to the hearing.  Accordingly, I do not recommend a remand under Sentence Six of §405(g).

### G.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

29

Dated: June 19, 2015                    s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE


I certify that a copy of this document was sent to parties of record on Friday, June 19, 2015, electronically and/or by U.S. Mail.


                                        s/Michael L. Williams
                                        Case Manager to the
                                        Honorable Anthony P. Patti

30